1813.

LYLE
*v.*
DUCOMB.

---

## Low and another *against* DAVY.

Philadelphia,
Monday,
July 12.

CASE. "On the 17th of *March* 1807, the defendant, as President *pro tem.* of the *United States* Insurance Company, subscribed a policy of insurance, for and on behalf of the plaintiffs, in the sum of 17500 dollars on goods on board the ship *Le Roy*, upon a voyage at and from *New York* to *Bremen*, at a premium of six per cent.; the same being declared on sugars valued at 100 dollars per hogshead, coffee at twenty-seven cents per pound, and *Nicaragua* wood at 120 dollars per ton.

"On the 5th day of *April* 1807, the ship *Le Roy* sailed from *New York* upon the voyage insured, having on board goods, the property of the plaintiffs, amounting in value to the sum insured in the policy, according to the value therein expressed. On her voyage, the ship experienced heavy gales of wind, by which part of her cargo was damaged. On the 11th of *May* 1807, she was brought to, and boarded by the *British* privateer *Busy*, *William Bell*, commander, who seized and sent her into *Plymouth*. The ship was restored to the claimants, her papers being indorsed by the Admiralty Court, forewarning her not to enter the river *Weser*, the

If the assured, in consequence of the destination being blockaded, accepts his goods from the carrier at an intermediate port, paying full freight, and from thence transports them by lighters to their destined port, he cannot recover from the underwriter on goods, either the expenses of transhipping and the freight paid for the lighters, or a premium of insurance paid for the risk in the lighters.

same being blockaded by the *British* squadron; and thus forewarned, proceeded to *Tonningen*, where the ship arrived. The cargo was landed at *Tonningen*, and there delivered to the agents of the consignees at *Bremen*, who paid the entire freight, by the bills of lading, and the goods were forwarded in lighters for *Bremen*, one of which was captured by the *British* and restored. The plaintiffs did not abandon. In the adjustment of the loss, arising upon the damaged goods, the assured charge to the underwriters the expenses of landing and reshipping, and the freight paid for the trans portation of their goods in lighters from *Tonningen* to *Bremen*, and also the premium of insurance paid on one of the said lighters, which was captured by the *British* and after wards restored.

" Two questions are submitted to the Court.

" 1. Are the expenses and freight paid for the transportation of the goods in lighters from *Tonningen* to *Bremen*, or either of them, properly charged to the defendant in the adjustment of the partial loss?

" 2. Is the premium of insurance paid on said lighter properly charged in such adjustment?

" If either of said questions is decided in the affirmative, judgment is to be entered for the plaintiffs, and the amount of the partial loss to be ascertained and adjusted by referees to be appointed by the Court, under the Court's decision of these questions.

" If both questions be decided in the negative, judgment to be entered for the defendant."

*Chauncey* for the plaintiffs. 1. The expenses and extra freight were paid to prevent a total loss; for the charter party being dissolved by the blockade, the master, unless full freight had been paid at *Tonningen*, would have been intitled to bring back the goods to *New York*, and the voyage would thus have been broken up. It is the case of a payment made necessary for the whole concern by the peril of blockade, and is chargeable upon the same principle with expenses incurred to liberate an adventure from restraint. *Park* 174., *Beawes* 150.

2. The insurance was a measure of just precaution, arising out of the peril insured; and was effected for the benefit of whom it might concern, before the insurance in this country

was known. It should therefore be borne by the defendant. *Fontaine* v. *Columbia Ins. Co.* (a).

*Binney* for the defendant. 1. The payment of full freight at *Tonningen* was a voluntary act, and not a consequence of the peril; for the charter being at an end, all that the acceptance of the goods created an obligation to pay, was freight *pro rata*, and then the freight to *Bremen* would have made up the entire freight. If the owner of goods pays more than one full freight for the voyage, it is his own fault; the underwriters on goods have nothing to do with it. It does not appear that the goods would have been brought back, if full freight had not been paid; and if they would have been, the payment was not made to prevent a total loss, because whether total loss or not, depended upon the plaintiff's electing to abandon, and not upon any fact that existed at the time of payment.

2. If the defendant was on the policy to *Bremen*, he cannot be charged with a premium on the same risk; if he was not, the events of that part of the voyage do not concern him. The *New York* case charged the premium to the underwriters, because the captain was forced to allow it to the agents who gave bonds to liberate the cargo, and who chose to insure their own interest. Here the same interest was voluntarily insured a second time.

TILGHMAN C. J. This is an action on a policy of insurance on goods in the ship *Le Roy*, on a voyage from *New York* to *Bremen*. In the course of the voyage, the ship was taken by a *British* privateer, and sent into *Plymouth* in *England*. The Court of Admiralty ordered restitution to the claimants, but the ship's papers were indorsed with a warning not to enter the river *Weser*, which was then blockaded by a *British* squadron. Being thus warned, the ship proceeded to *Tonningen*, where having arrived in safety, the agents of the consignees in *Bremen* received the cargo and paid the whole freight. They then sent the goods to *Bremen* in lighters, one of which was captured by the *British*, and restored. An insurance was effected from *Tonningen* to *Bremen*.

The question is, whether the defendants are liable for the

(a) 9 *Johns.* 29.

1813.

Low
v.
Davy.

cost of this insurance, or for the expenses of carrying the goods from *Tonningen* to *Bremen.*

I cannot see upon what principle the defendants are answerable for those charges. If the plaintiffs thought proper to pay the whole freight when only part was due, it was their own affair, with which the defendants had nothing to do. Here has been no loss, the goods have arrived in safety at the port of destination. Whether the plaintiffs had or had not a right to abandon, is not now in question, for they did not abandon. The ship earned at most only a *pro rata* freight; and if the owners of the goods after paying the entire freight of their own accord, incurred additional expenses in transporting them to *Bremen*, it is not in the nature of a loss for which they can claim an indemnity from the underwriters. Whether the *Weser* remained under actual blockade at the time the goods were carried round from *Tonningen* to *Bremen*, does not positively appear, although from the capture of one of the lighters, we are led to suppose that it did. The restitution of the goods captured in this lighter, may be accounted for from a fact mentioned in the case of *The Maria*, decided by Sir *William Scott*, 6 *Rob.* 201. It seems that the *British* government, on a remonstrance from *Bremen*, was induced to relax the blockade, so far as to permit the importation into that port in lighters. As for the *insurance* from *Tonningen* to *Bremen*, there is, if possible, less colour for that than the other charges. Because, if the underwriters remained liable for the risque between *Tonningen* and *Bremen*, they gave no authority to the plaintiffs to burthen them with the cost of another insurance, which it was folly to make without necessity. And if they were not liable for that risque, of course they are not liable for the expense of insuring against it. Upon the whole, I am of opinion that the defendants are not liable for any of the charges on the transportation of the goods from *Tonningen* to *Bremen.*

Yeates J. No proposition is more self-evident, than that a greater sum than has been stipulated to be paid for the transportation of goods from one place to another, cannot be legally or morally exacted.

In this case, the sugars, coffee and *Nicaragua* wood of the plaintiffs, were insured in a valued policy upon a voyage at and from *New York* to *Bremen.* The ship was seized and

1813.

Low
v.
Davy.

sent into *Plymouth*. She was there restored, her papers being indorsed, " not to enter the river *Weser*, the same being " blockaded." She proceeded to *Tonningen*, where the articles were landed and delivered to the agents of the consignees at *Bremen*, who paid the *entire* freight according to the tenor of the bills of lading, and forwarded the goods in lighters to *Bremen*.

The plaintiffs have insisted that the payment of this second freight and the expenses thereon, prevented a total loss to the insurers, and justly form an article of charge in the adjustment of a partial loss, the turning the vessel back from the course of her voyage, and the blockade of *Bremen* which lies on the river *Weser*, falling within the restraint of princes. To this it has been correctly answered that these events might have formed a ground of abandonment to the insurers, if the insured or their agents had chosen so to consider them. But they did not abandon; they elected to take their chance of the market at the port of destination, being an inconsiderable distance from it when at *Tonningen*. Here they paid the ship owners their full freight, although the same could not have been demanded on any principle of maritime law, unless the latter had delivered the merchandize at *Bremen*, or had offered to transport it thither, and the same had been refused by the agents. It is fully settled that insurers on goods have nothing to do with the freight, and that they only stipulate an indemnity for loss sustained by any of the perils expressed in the policy. With what propriety then can the voluntary unadvised conduct of the plaintiffs' agents, in paying a second freight from *Tonningen*, and the attendant expenses, be visited on the underwriters? These expenditures were not the legitimate effect of the blockade of *Bremen*, but must be ascribed to sub-agents under their principals, against whose acts there was no stipulated indemnity.

The second point appears to me equally clear in the defendant's favour. If the underwriters here were responsible under the circumstances of this case, for the transportation of the goods from *Tonningen* to *Bremen* in case a loss should arise, recourse should be had to them upon their policy, which must be deemed an adequate indemnity; but if they were not so reponsible under the original contract, the act of the plaintiff's sub-agents could not render them liable. The

1813.          defendant has not engaged to pay a premium on a second

Low          policy, effected without his knowledge or approbation.

*v.*          I am clearly of opinion in the negative on both of the ques-

DAVY.          tions submitted to our decision.

BRACKENRIDGE J. not having been present at the argu-
ment, gave no opinion.

Judgment for defendant.